IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 25-113-JLH-LDH |
| KEN DECKER, LAUREN GUTIERREZ, | ) |
| TRUDENA HORSEY, DONNA BARNES, | ) |
| KENT COUNTY LEVY COURT, a municipal | ) |
| corporation in Delaware, TAYLOR BUCKETT, | ) |
| and KEVIN SIPPLE, in his official capacity only, | ) |
| | ) |
| Defendants. | ) |

FILED

FEB - 5 2026

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendants Ken Decker ("Decker"), Lauren Gutierrez ("Gutierrez"), Trudena Horsey ("Horsey"), Donna Barnes ("Barnes"), Kent County Levy Corut ("Kent County"), Taylor Buckett ("Buckett"), and Kevin Sipple's ("Sipple") (collectively, "Defendants") Motion to Dismiss Plaintiff Joseph Simmons' ("Plaintiff") Amended Complaint. (D.I. 27 (the "AC")). The motion has been fully briefed. (D.I. 29, 31, 32). For the following reasons, I recommend that Defendants' Motion to Dismiss be GRANTED-IN-PART and DENIED-IN-PART.

**I.   BACKGROUND**

This action arises out of Defendants alleged wrongful termination of Plaintiff in violation of his First and Fourteenth Amendment rights and Title VII of the Civil Rights Act of 1964. (*See generally* AC). Plaintiff began working in 2014 for Kent County as an Information Technology consultant and was promoted to Director of Information Technology in 2022. (*Id.* ¶¶ 17–20). Plaintiff was an Employee Council member that was duly elected according to the Employee Council By-Laws. (*Id.* ¶ 1). In May of 2014, Plaintiff spoke at an Employee Council Meeting.

(*Id.* at ¶ 21). According to Plaintiff, the Member of the Employee Council were "anticipating that they would provide to Defendant Kent County" proposed recommendations regarding vacation days and military services policies. (*Id.* ¶ 22). The President of the Employee Counsel drafted a letter that allegedly did not accurately represent the recommendations of the Employee Council with respect to those policies but, following the objection of the Employee Council Members, he did not deliver it to Kent County. (*Id.* ¶ 23). So, on May 15, 2024, Plaintiff spoke at the Employee Council Meeting about the contents of the letter that was drafted but never sent. (*Id.* ¶ 24). At the Meeting, Plaintiff urged the Employee Council to vote regarding the recommendations contained in the unsent letter. (*Id.*).

The following week, Gutierrez and Horsey demanded that Plaintiff resign from Employee Council. (*Id.* ¶ 27–28). Plaintiff refused and was then given a written warning for "unprofessionally flicking his pen" in Gutierrez's direction. (*Id.* ¶¶ 27–30). In July, less than two months after Plaintiff spoke at the Employee Council Meeting, Gutierrez and Horsey placed Plaintiff on a Performance Improvement Plan ("PIP"). (*Id.* ¶ 31). Plaintiff "successfully disputed" certain portions of the PIP and he was told that changes would be made, but he was never provided with a revised PIP. (*Id.* ¶¶ 31–33). The PIP that was presented to Plaintiff was for a 6-month period. (*Id.* ¶ 32). Several weeks after being put on the PIP, Plaintiff was notified that he would be placed on administrative leave pending an investigation into his allegedly false statements regarding outsourcing in the IT department. (*Id.* ¶¶ 34–35). Plaintiff maintains that any such statements were not improper. (*Id.* ¶ 26 –37). Plaintiff was then provided with a memo written by Horsey which recommended termination and, despite his appeal to Gutierrez, Plaintiff was terminated on September 10, 2024. (*Id.* ¶¶ 39–40, 45–47).

## II. LEGAL STANDARD

### a. Motion to Dismiss

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III. DISCUSSION

### a. Free Speech and Freedom of Association Claims (Counts I & IV)

Plaintiff alleges that he engaged in Constitutionally protected speech and that Defendants violated his right to free speech by retaliating against him. (AC ¶¶ 23–25, 92). To plead a claim

3

for First Amendment retaliation under 42 U.S.C. § 1983, a Plaintiff must allege: (1) he engaged in constitutionally protected speech; (2) defendant took retaliatory action sufficient to deter a person from exercising his constitutional rights; and (3) there is a causal link between the conduct and the adverse action taken against him. *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). In determining whether an employee's speech addresses a matter of public concern, the court must look at the "'content, form, and context of a given statement, as revealed by the whole record.'" *Rankin v. McPherson*, 483 U.S. 378, 384–85 (1987) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). Defendants argue that Plaintiff does not allege that he engaged in protected speech, that he fails to allege retaliatory conduct, and that he fails to plead a causal link between the protected activity and the adverse action. (D.I. 29 at 6–9). Failure to adequately plead any of the three requirements compels me to dismiss this cause of action.

To determine whether a public employee's speech is protected, courts apply a three-part test: (1) whether the employee spoke as a private citizen, rather than an employee; (2) whether, when speaking as a private citizen, the speech involved a matter of public concern; and (3) whether the government entity had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).[1]

As an initial matter, I was unable to locate any averments in the AC supporting the inference that Plaintiff was speaking at the Employee Council meeting as a private citizen, and not as an employee. That said, even if I assumed that Plaintiff's averments were sufficient in this regard, I do not agree that Plaintiff was speaking on a matter of public concern. Plaintiff argues

---

[1] Though the Supreme Court held there are "two inquiries," the first prong is generally broken into two: that is, was the employee speaking as a citizen and was the employee speaking on a matter of public concern. *Garcetti*, 547 U.S. at 418.

4

that all three parts of the test are met here and analogizes his situation to the facts in *Czurlanis v. Albanese*, 721 F.2d 98 (3d Cir. 1983). (D.I. 31 at 9). In *Czurlanis*, the plaintiff worked for the county as a mechanic and attended public meetings of the Board (comprised of a group of elected officials) that had both administrative and legislative responsibilities. *Czurlanis*, 721 F.2d at 100. At the meeting, Czurlanis "protested the waste of taxpayer money and alleged serious deficiencies in record keeping[]" and waited to voice these concerns "until the time set aside by the board during its public meeting when *citizens* are invited to address [them.]" *Id.* at 104 (emphasis added). Here, Plaintiff voiced his concerns about vacation and military leave policies that were applicable only to employees of Kent County, at a meeting that is not alleged to have been open to the public, and at which meeting there was no set-aside period for citizens to voice complaints. (AC ¶¶ 21–24). Further, unlike *Czurlanis*, where the Board were elected officials who held public meetings, Defendants assert the Employee Council is composed of, and meetings are only attended by, county employees, an assertion with which Plaintiff does not disagree and on which Plaintiff's AC is silent. 721 F.2d at 100; (D.I. 29 at 6, Ex. A). Rather than public concern, this was an issue that directly impacted Plaintiff as an employee: namely, his vacation and military leave days. Plaintiff includes no averments from which I could infer that this was a matter of public concern, and simply saying so does not make it so. This is different from *Czurlanis*. There, plaintiff raised the issue of "taxpayer money," a concern to the general public, rather than vacation and leave policies applicable only to the employees of Kent County, at an Employee Council meeting, of which Plaintiff was a member. *See Connick,* 461 U.S. at 147 (holding "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest" it is not appropriate for a federal court to review the personnel decision by the public agency) (quoting *Bishop v. Wood*, 426 U.S. 341, 349–50 (1976)).

With respect to Plaintiff's claim for violation of the First Amendment right to Free Association, Plaintiff pleads two paragraphs. (AC ¶¶ 107–08). Paragraph 107 states, "Plaintiff was treated to adverse employment actions up to and including the terminated of his employment because he was a Member of the Employee Council and because he refused to resign from the Employee Council when he was ordered to do so." (*Id.* ¶ 107). Similarly, paragraph 108 provides, "Plaintiff Simmons' association with the Employee Council and his refusal to resign from the Employee Council was a proximate cause of all of the adverse employment actions against him, up to and including the termination of his employment." (*Id.* ¶ 108).

Both Plaintiff and Defendants agree that the requirements for a Free Association claim are identical to those of Free Speech. (D.I. 29 at 11; D.I. 31 at 16 (citing *Palardy*, 906 F.3d at 80–81)). My analysis of this Free Association claim is thus identical to that of the Free Speech claim, and for the reasons set forth above I recommend dismissal because Plaintiff has failed to allege facts supporting this claim.[2] *See Connick*, 461 U.S. at 147–48; *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992) (when an employee's freedom of association claim "implicate[s] associational rights in essentially the same way and to the same degree" as their free speech claim, the "*Connick* analysis [will govern Plaintiff]'s freedom of association claim.") The facts here echo the facts of *Sanguigni*, in that Plaintiff's free association claim is "co-extensive with the [his] free speech claim[]" and should be dismissed for this reason. *Palardy*, 906 F.3d 76 at 84 (citing *Sanguigni*, 968 F.2d at 400); (*see generally* D.I. 27 ¶¶ 106–08).

---

[2] Even if I could stretch to find that Plaintiff was speaking as a public citizen and on a matter of public concern, Plaintiff has not alleged any causal connection between being a member of the Employee Council and his termination. Rather, he alleges that it is what he said at the Employee Council meeting that prompted his termination, not simply that he was a member.

Accordingly, I recommend that Defendants' Motion to Dismiss as to Counts I and IV be granted.

### b. Racial Discrimination and Retaliation under the 14th Amendment and Title VII (Counts II, III, VII, & VIII)

Title VII and the Fourteenth Amendment claims are often treated similarly because of the "overlap between Title VII [] and constitutional discrimination claims." *Holt v. Pa.*, 683 F. App'x 151, 160 (3d Cir. 2017) (citing *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431–33 (3d Cir. 1997). To plead a discrimination claim for a Title VII or Equal Protection Clause ("EPC") violation, a plaintiff must allege facts sufficient to make a *prima facie* case of discrimination. Specifically, a plaintiff must allege: "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Est. of Oliva ex rel. McHugh v. N.J.*, 604 F.3d 788, 797 (3d Cir. 2010) (internal citation omitted). Plaintiff has not sufficiently alleged that either the second or third prongs have been met.

Under Title VII, a Plaintiff must plead that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) similarly situated employees were treated more favorably, *or* that the adverse action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. U.S. Postal Serv.* 353 F.3d 789, 797–98 (3d Cir. 2003). The first three elements of Plaintiff's *prima facie* case (Counts II and VII) are undisputed. As a black male he is a member of a protected class, and it is undisputed that he was qualified for his position. (D.I. 19 at 9). Finally, it is undisputed he suffered an adverse employment action: i.e., Plaintiff was terminated and not rehired. (*Id.* at 10). It is with the fourth factor that Defendants take issue. (*Id.* at 9–10). This is a close call, but at the motion to dismiss stage the nod goes to Plaintiff.

7

Plaintiff's lone fact to support an inference of race discrimination is a statement allegedly made by Decker. "Culturally {you} don't fit with {my} type of Senior Manager." (D.I. 27 ¶¶ 102, 123). Plaintiff further alleges that he immediately let Defendant Horsey know that he believed the statement to be a reference to Plaintiff's race. (*Id.*). Though thin, this sort of coded language is sufficient at the motion to dismiss stage. *Sarullo*, 352 F.3d 789, (3d. Cir. 1999) (citing *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir.1996)) ("[T]he *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied."). The Court is aware of cases where a single instance of questionable conduct has been held to be insufficient but, here, under the facts and circumstances and at this stage I think Plaintiff has done just enough to get by.³

My view of Plaintiff's retaliation case (Counts III and VIII) is similar. For a *prima facie* showing of retaliation under Title VII, a plaintiff must show: "'(1) []he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against h[im]; and (3) there was a causal connection between h[is] participation in the protected activity and the adverse employment action.'" *Moore v. Cty. of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995)). The first two elements are not meaningfully disputed.⁴ As to the third element, the AC asserts that Plaintiff filed a "Formal

---

³ For example, in *Miller v. Thomas Jefferson Univ. Hosp.*, the Third Circuit determined that the phrase "you people," standing alone, was not enough to survive summary judgment. 565 F. App'x 88, 92–93 (3d Cir. 2014). But we are not at summary judgment, and Plaintiff has not yet had the benefit of discovery. If Plaintiff cannot marshal more evidence as the case proceeds, he may meet the same fate as the plaintiff in *Miller*.

⁴ Defendants complain that Plaintiff does not plead that there was an adverse employment action. (D.I. 29 at 10). But, they agree, on that same page, that "Plaintiff's termination was due to disciplinary measures[.]" (*Id.*).

Complaint of Hostile Work Environment" and pointed out "the discriminatory statement made to him by [] Decker" and pointed out to Horsey "[Plaintiff] believed that this statement by [] Decker was a reference to [his] race[.]" (D.I. 21 ¶ 102). At this stage, that is enough. Defendants' arguments are more that they disagree with the reason for termination, and less that Plaintiff failed to adequately plead retaliation. Under the *McDonnell Douglas* burden shifting framework, Plaintiff must be awarded an opportunity to rebut Defendants' stated reason *following discovery*.[5] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (noting that the *McDonnell Douglas* framework is designed to assist courts in evaluating evidence in discrimination cases following discovery, it does not establish pleading requirements to govern motions to dismiss).

Accordingly, I recommend that Defendants' motion be denied as to Counts II, III, VII, and VIII.

### c. Breach of Implied Covenant of Good Faith and Fair Dealing (Count V)

Under Delaware law, there are only four narrow exceptions recognized for at-will employment termination which can give rise to a suit. *See Carroll v. ABM Janitorial Servs.-MID Atl., Inc.*, 970 F. Supp. 2d 292, 300 (D. Del. 2013), aff'd, 569 F. App'x 110 (3d Cir. June 17, 2014) (citing *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000)). Plaintiff relies on one: the falsification of

---

[5] Defendants assert that the Civil Rights Act ("CRA") of 1866 is no longer applicable to race claims, but, as Plaintiff points out, as recently as 2017, the Third Circuit has allowed claims for racial discrimination be brought under 42 U.S.C. § 1981. *See Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) (applying 42 U.S.C. § 1981 to racial discrimination, harassment, and retaliation claims). Indeed, when comparing the two theories of discrimination brought under both Title VII and § 1981, the Third Circuit has explained that a theory of "disparate impact" is brought "under Title VII alone" while a theory of "disparate treatment" can be brought under § 1981 as well. *Wilmore v. City of Wilmington*, 699 F.2d 667, 669–70 (3d Cir. 1983). Absent binding legal authority to the contrary, and there was none cited by Defendants, I decline to recommend dismissal of Plaintiff's CRA claims on this basis.

records to justify termination (AC ¶¶ 110–11). *See E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 441–44 (Del. 1996). To plead the fourth exception, Plaintiff must allege that Defendant falsified or manipulated his employment records to create fictitious grounds for termination, not just that the false reasons were later memorialized at some point. *See Gray v. Kirkwood Dental Assocs., P.A.*, 2019 WL 4464967, at *6 n.8 (quoting *Bomberger v. Benchmark Builders Inc.*, 2017 WL 1377595, at *3 (D. Del. Apr. 13, 2017); *see also Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176, 191 (D. Del. 2001) ("[E]mployers are only culpable for the manufacture of grounds for dismissal, not for the statement of a false reason for dismissal.").

Plaintiff pleads that Defendants manufactured and falsified information, beginning with the PIP, in his file to justify his eventual termination after he voiced concerns with Kent County policies. Specifically, Plaintiff says that he was terminated on "baseless claims after the Defendants' creation of fictitious job performance issues. . . after the May 15, 2024[,] Meeting." (D.I. 31 at 18). The AC states his personnel file was "papered . . . with falsehoods in order to manufacture alleged reasons to terminate [his] employment." (AC ¶ 110).

Accordingly, I recommend that Defendants motion as to Count V be denied.

### d. Defamation (Count VI)

Plaintiff brings a defamation claim against all Defendants. The parties disagree as to whether 10 *Del. C.* § 4001 or § 4011 should apply to Count VI. Plaintiff argues that Defendants are employees of the state and subject to liability under § 4001 (the State Tort Claims Act) and Defendants argue they are employees of a municipality and thus protected from liability under § 4011 (the Delaware Municipal Tort Claims Act). (D.I. 29 at 12, 14; D.I. 31 at 18). I agree with

Defendants that § 4011 is the controlling statute, as Plaintiff and the implicated Defendants are municipal, not state, employees.[6] Title 10 of the Delaware Code, Section 4011(c) provides:

> An employee may be personally liable for acts or omissions causing *property damage, bodily injury or death* in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

(emphasis added).

Plaintiff does not plead any of the exceptions under 10 *Del. C.* § 4012. Plaintiff alleges that the Defendants provided "internal written reprimands and . . . in public hearings, that [they] made untrue statements and/or spread false information." (AC ¶ 113). However, the AC alleges only that Plaintiff was defamed, not that he suffered any injury specified in § 4011(c). Absent any allegation of property damage, bodily injury, or death, Plaintiff cannot overcome the immunity afforded to Defendants.

Accordingly, I recommend that Defendants' motion to dismiss as to Count VI be granted.

### e. Individual Defendants Barnes, Burkett, Supple, and Kent County

Plaintiff includes claims against Barnes, Burkett, Sipple, and Kent County. Defendants move to dismiss these counts because the AC does not make clear what each is alleged to have done. As set forth below, with respect to Barnes, Burkett and Sipple, I agree. With respect to Kent County, as set forth below, I do not recommend dismissal.

---

[6] *See Davis v. Town of Georgetown*, 2001 WL 985098 (Del. Super. Ct. Aug. 22, 2001) (applying 10 *Del. C.* § 4011 to town employees); *see also Clouser v. Doherty*, 175 A.3d 86 (Table) (Del. 2017) (applying 10 Del C. § 4001 to State Defendants only but not to the local School Defendants); *Brown v. Day*, 69 A.3d 370 (Table) (Del. 2013) (applying 10 Del C. § 4001 to a State Trooper).

Barnes and Burkett are alleged to have made false statements, but the AC contains no factual allegations which directly connect them to Plaintiff's subsequent termination. (*See* AC ¶¶ 15, 113). One paragraph each for Barnes and Burkett is not enough to maintain an action against them as individuals and is much more akin to the conclusory allegations cautioned against by the Supreme Court in *Iqbal* and *Twombly*. Plaintiff's answering brief supplements the relative dearth of information with some useful and informative context about the claims against them, but that information comes too late. Plaintiff may not amend the allegations of the AC through briefing in response to a motion to dismiss. *Arunachalam v. Int'l Bus. Machs. Corp.*, 2021 WL 7209362, at *10 (D. Del. Dec. 29, 2021) (citing *Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998) ("Plaintiff may not amend the [AC] through argument in her responsive brief and any new facts provided in her briefing may not be considered" when deciding a motion to dismiss).

Sipple is named as a defendant because he is Acting County Administrator, and the AC contains no allegations as to any action, or grossly negligent inaction, against him. Rather he is sued only to the extent that "this Court may decide to issue an injunction which may require [him] to act in some capacity." (AC ¶ 16). Sipple need not be named as a defendant for injunctive purposes, as Kent County is party to this lawsuit and Plaintiff's citation to *Will v. Mich. Dept. of State Police* 491 U.S. 58, 71 (1989), with no analysis attached, is unhelpful. (D.I. 31 at 20).

Kent County, as Plaintiff points out, must be named because "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. du Pont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1997).[7] Though the AC contains no specific allegations against

---

[7] Defendants raise the argument that respondeat superior cannot apply here—and argue that Plaintiff must plead a custom, policy, or practice—for the first time in their Reply Brief. (D.I. 32 at 7). "Arguments raised for the first time before a district court in a reply brief are deemed forfeited." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023) (citing *Jaludi v.*

Kent County, it alleges that Kent County had knowledge, direct or indirect, of the actions being undertaken by their employees to discriminate against Plaintiff. Defendants do not meaningfully dispute this or cite a case that requires me to go another way. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor" a government entity is only responsible when "execution of a governments policy or custom . . . inflicts the injury[.]").

Accordingly, I recommend that Defendants' Motion to Dismiss all Counts as to Barnes, Burkett, and Sipple be granted, but be denied as to Kent County.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be GRANTED-IN-PART and DENIED-IN-PART. I recommend that Defendants' Motion to Dismiss be GRANTED as to Counts I, IV, and VI, and as to Defendants Barnes, Burkett, and Sipple for all Counts and DENIED as to Counts II, III, V, VII, and VIII and as to Defendant Kent County. I note that this dismissal is without prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

---

*Citigroup*, 933 F.3d 246, 256 n.11 (3d. Cir. 2019)). Even if this argument was properly raised, Plaintiff does not sue Kent County only because they employ the other Defendants. Rather, Plaintiff pleads in the AC that Kent County knew of the other Defendants actions violating his Constitutional rights and allowed that custom to continue. (AC ¶¶ 8). Perhaps light, but at the motion to dismiss stage I must view the AC in the light most favorable to Plaintiff. Accordingly, Plaintiff has met his burden alleging that Kent County knew of the actions of its employees.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated February 5, 2026

                                                              Laura D. Hatcher
                                                              United States Magistrate Judge